No. 1,533.

## GERMAN-AMERICAN BUILDING ASSOCIATION *v.* DROGE.

AGENCY.—*Building Association.—Prepaid Stock, Sale of.—Scope of Agent's Authority.*—A building and loan association whose agent is not expressly authorized to sell prepaid stock and collect the price thereof, is liable to one for money paid to such agent for prepaid stock sold to him by the agent, the transaction being within the scope of the agent's apparent authority, and the purchaser being ignorant of any limitations on the agent's authority ; but without the knowledge, approval or ratification of the association, the agent has no right to trade or agree to trade prepaid stock of his principal for stock in another association.

From the Jackson Circuit Court.

*J. Overmyer, J. F. Carson, C. N. Thompson, B. H. Burrell* and *F. Branaman,* for appellant.

*A. N. Munden,* for appellee.

DAVIS, J.—The substantial averments in the complaint are that appellee purchased of appellant nine shares of prepaid stock for $450, which he paid, and that appellant neglected and refused to issue such stock to him.

The trial court proceeded on the theory that it was an action to recover the purchase-price paid by appellee for the stock which appellant failed to issue to him, and on this theory the complaint, in our opinion, states a good cause of action, and there was no error in overruling the demurrer thereto.

The evidence shows that appellee, through Warner, the agent of appellant, in 1893, purchased nine shares of prepaid stock in said company at the par value of $100 each, and paid him $150 in cash, and delivered to him certificate of stock in the Seymour Mutual Building

and Loan Association calling for $300, for said stock. The appellee recovered judgment for $450.

The by-laws of the company provide that prepaid stock may be issued in shares of $100 each, which shall be paid for at the rate of $50 per share.    In other words for $450 in cash, and a membership fee of $1 per share, appellee was entitled to nine shares of prepaid stock of the par value of $100 per share.    It appears, from the evidence, that Warner established local boards, appointed officers for the same, solicited stock, collected membership fees, fines, monthly dues, negotiated loans, examined and passed titles to real estate proposed as security, and estimated the value of the same, collected the price of prepaid stock, paid semi-annual dividends on such stock, etc.    The value of the stock in the Seymour Mutual Building and Loan Association delivered to him by appellee is not clearly shown.    Neither this stock nor the money paid Warner by the appellee was paid or delivered by him to appellant.    Soon after he received the stock he traded it to another, who seems to have withdrawn it from the Seymour association, but in one year the association paid only one-third of the withdrawal, and the payment of the balance at the time of the trial in the court below was dependent upon its ability to raise money for that purpose.    What Warner received for the stock does not appear.    The evidence does not disclose that any of appellant's officers knew of Warner's stock trading, and there is no evidence showing that he or any officer or agent of appellant was authorized to accept stock in another association in payment of stock in appellant's association.    Counsel for appellant earnestly insist that he was not authorized to sell prepaid stock and collect the price therefor.    We are of the opinion, however, that there is ample evidence in the record to show that Warner, in the sale of the nine

German-American Building Association *v*. Droge.

shares of prepaid stock to appellee, was acting within the scope of his apparent authority, and that as to the $150 paid him in cash, the jury was authorized in returning a verdict against the appellant. The company gave Warner credit to the public as a suitable and worthy agent, and although they may not have authorized him in express terms to sell prepaid stock and collect the price thereof, the company in some instances at least acquiesced in, and ratified his, acts in such sales and collections. The appellee, an ignorant man, having acted in good faith in dealing with Warner within the scope of his apparent authority, and seeing that somebody must be the loser by his deceit, the jury were justified under the facts and circumstances in this case in the conclusion as to the $150 at least, that it is more reasonable that he who employs and puts confidence in the deceiver should be the loser than a stranger without notice of the limitation or restriction of his authority. *Kerlin* v. *Nat'l Accident Association*, 8 Ind. App. 628; *Pittsburgh, etc., R. W. Co.* v. *Racer*, 10 Ind. App. 503.

Is appellant liable to appellee under the circumstances for the stock in the Seymour association? After careful consideration, we have reached the conclusion that this part of the transaction was not within the apparent scope of Warner's authority. In our opinion the most favorable construction that can be given the evidence in behalf of appellee is, that the sale of prepaid stock by him for cash, and the collection of the purchase-price therefor, were under the circumstances, within the scope of his apparent authority, but that without the knowledge, approval or ratification of appellant, he had no right to trade or to agree to trade such prepaid stock of appellant's for stock in another association.

In the absence of such knowledge, approval or ratifi-

cation of appellant—that is to say, of its officers—he could not bind the appellant by any such arrangement, short of the actual collection of the money. *Miller* v. *Edmonston*, 8 Blackf. 291; *Kirk* v. *Hiatt*, 2 Ind. 322; *Corning* v. *Strong*, 1 Ind. 328; *McCormick* v. *Wood, Water A., etc., Co.*, 72 Ind. 518; *Hoffman* v. *Hancock, etc.*, 92 U. S. 161.

A payment by check is an ordinary commercial transaction and is sufficient. *Indiana Bond Co.* v. *Bruce*, 13 Ind. App. 550.

Ordinarily, building, loan fund and saving associations do not deal in stocks, but are depositories and investors of money. Trafficking in stock of other associations is a power not ordinarily exercised by general agents of such institutions in conformity with the usages of business. Sections 4446 and 4447, R. S. 1894.

Whether the officers or general agents of appellant, who are charged with the management of its affairs, have power under any circumstances to issue prepaid stock in exchange for stock in other associations, is a question we do not determine. In this case appellant has not received or retained the benefit of the contract, or any part thereof, entered into between Warner and appellee, and as to the stock in the Seymour association that appellee delivered to said Warner, the evidence, in our opinion, fails to show any right of action against appellant.

Corporations should be careful in the selection of agents, because as between them and the public the tendency is, in accordance with the dictates of justice, to enlarge the powers of such agents, in the absence of express notice of limitations, so as to embrace all his acts within the scope of his apparent authority, and especially those powers which are ordinarily exercised by

agents of that particular class.  Thompson Corporations, section 4890.

The judgment of the trial court is reversed, with instructions to sustain appellant's motion for a new trial.

Filed April 2, 1896.