BULEN ET AL. *v*. PENDLETON BANKING CO., ADMR., ET AL.

[No. 17,721. Filed April 5, 1948.]

218

*Salyer & Cleveland,* both of Anderson, attorneys for appellants.

*Bagot, Free & Morrow, and Busby & Davisson,* all of Anderson, attorneys for appellees.

HAMILTON, J.—The appellee, Pendleton Banking Company, as administrator of the estate of Anna E. Johnson, deceased, commenced this action by filing a petition in the Madison Circuit Court. In its petition said administrator prayed for an order of the court determining the ownership of a checking account carried in the Pendleton Banking Company in the name of "Anna E. Johnson and/or Anna V. Bulen" in the sum of $2,326.69, and asked for instructions as to the allocation of said fund.

The matter was submitted to the court for hearing upon said petition to which all of the heirs at law of said Anna E. Johnson, deceased, voluntarily appeared in person, and by counsel, and testified and submitted evidence as to the ownership of said fund. However, no answers or other pleadings were filed by any of

said heirs. Appellant Anna V. Bulen requested a special finding of facts and conclusions of law.

The facts as found by the court, its conclusions of law, and judgment rendered thereon are as follows:

"(1)  Anna E. Johnson died on the 11th day of February, 1945. At the time of her death she resided at 841 Broadway, Anderson, Indiana, with her husband, Charles H. Johnson.

"(2)  She left surviving her as her sole and only heirs at law her husband, Charles H. Johnson, and her six children born to a previous marriage, to-wit: Neva L. Huntzinger, William Bousman, Raymond Bousman, Elva B. Widener, Gillette Bousman and Anna V. Bulen, all of whom were adults, married and one of whom lived with decedent.

"(3)  That the said surviving husband, Charles H. Johnson, and decedent's six children, as well as Pendleton Banking Company, Administrator, have all appeared, participated in and given testimony in said hearing.

"(4)  That Pendleton Banking Company is the duly appointed, qualified and acting Administrator of decedent's estate, and is also the depository of decedent's checking account.

"(5)  That decedent opened said checking account several years prior to her death, and that the checking account when first opened was opened in the name of Anna E. Johnson.

"(6)  That on or about the 20th day of August, 1941, Anna E. Johnson had a balance in said checking account of approximately $500.00, and that on said date she changed the name of the account to Anna E. Johnson and/or Anna V. Bulen, and said account remained in said name until the death of the said Anna E. Johnson; that said change was made for the purpose of convenience; that Anna E. Johnson resided in Anderson, Indiana, which is about ten miles from Pendleton, Indiana, where the Pendleton Banking Company is located, and due to her advanced years she was unable to look after her banking matters.

"(7) At the time of decedent's death there was on deposit in said checking account the sum of $2,326.69. The said Anna V. Bulen had not deposited any of her own funds in said account, nor had she ever exercised any control over said fund for her own benefit. All of her control over the fund had been at the direction of the said Anna E. Johnson, and for the benefit of decedent and her husband. All of the funds had originated from decedent's real estate or from the earnings of her husband.

"(8) There is a conflict as to what part of the funds deposited in said account were the proceeds from decedent's farm, and what part were the proceeds from the earnings of Charles H. Johnson, husband of said decedent. Many of the Bank's statements which had been issued to the depositor had been multilated by blotting out or cutting off the name of Anna V. Bulen. This had been done to prevent the husband, Charles H. Johnson, from knowing the name in which the account was carried with said Bank. The said Charles H. Johnson was under the impression that the account was carried in the name of Anna E. Johnson and Charles H. Johnson. It is not necessary, however, to this case, to determine whether or not Charles H. Johnson was the owner of said account or any interest therein due to the fact that he stated that it was satisfactory to him for the fund to be declared an asset of decedent's estate.

"(9) Anna V. Bulen claims the fund as her sole property upon the death of decedent. The surviving husband and four of the children made claim to the fund as an asset of the estate.

"Upon the facts thus found the Court concludes that the said fund in the sum of $2,326.69 on deposit in said account in the Pendleton Banking Company was the property of decedent at the date of her death, and as such, is now an asset of her estate in the hands of the said Pendleton Banking Company as Administrator of decedent's estate.

"IT IS THEREFORE, CONSIDERED, ADJUDGED and DECREED by the Court that Pendleton Banking Company, Administrator of the

estate of Anna E. Johnson, deceased, be and it is hereby ordered to hold said account as an asset of the estate of Anna E. Johnson, deceased, and to make due accounting thereof in the adiminstration and settlement of said decedent's estate, all as provided by the law of the State of Indiana in the settlement of estates by Administrators."

The errors properly assigned in this court are: (1) The court erred in each of its conclusions of law; and (2) the court erred in overruling appellant's motion for a new trial. The other errors attempted to be assigned independently in this court constitute reasons or grounds proper to be assigned in the motion for a new trial and present no question when assigned independently as errors upon appeal. *Grand Rapids Motor Express* v. *Crosbie* (1947), 117 Ind. App. 360, 69 N. E. 2d 247, 249, 250; *State* v. *Brubeck* (1932), 204 Ind. 1, 3, 170 N. E. 81.

Appellants' motion for a new trial contains 27 specifications. Specifications 9 to 24, inclusive, allege error in admitting in evidence, over appellants' objections, certain evidence. However, appellants' motion for a new trial does not set out the specific questions propounded to the witness, the objections made thereto, the court's ruling thereon, or the answer thereto, although the substance of such answer is stated. The rule is firmly settled in this state that in order to present any questions for review upon appeal in the admission or rejection of evidence, the motion for a new trial must set out the question propounded, the objection, if any, which was made, the court's ruling thereon, and the answer of the witness, or the substance of such matters. *Johnnie J. Jones Exposition* v. *Terry* (1945), 116 Ind. App. 189, 195, 63 N. E. 2d 159; *Baltimore & O. R. Co.* v. *Pertics* (1943), 112 Ind.

App. 674, 679, 46 N. E. 2d 251; *Greer* v. *State* (1929), 201 Ind. 386, 388, 168 N. E. 581; *Brown* v. *State* (1939), 216 Ind. 106, 108, 23 N. E. 2d 267.

For the reasons stated, we must hold that no question is presented for our consideration by said specifications 9 to 24, inclusive, of appellants' motion for a new trial.

Specificaton 7 of the motion for a new trial alleges that the conclusions of law upon the special findings of facts are contrary to law.

It has been repeatedly held that the correctness of a conclusion of law can be challenged only by proper exception to such conclusion and by assigning as error in the appellate court that the trial court erred in the conclusion of law which it is desired to challenge. *Minter* v. *Bittler, Receiver* (1941), 108 Ind. App. 522, 524, 29 N. E. 2d 799; *Morsches-Nowels Lumber Co.* v. *Pence* (1939), 106 Ind. App. 219, 18 N. E. 2d 958; *Mertz, Admr.* v. *Wallace* (1931), 93 Ind. App. 289, 169 N. E. 333; *Mullahy* v. *City of Fort Wayne* (1932), 95 Ind. App. 229, 179 N. E. 563.

The same question is presented by appellant's assignment of error No. 6 and will be considered later.

Specification 8 of the motion for a new trial alleges:

"Error of law occuring at the trial and excepted to by those defendants and heirs at law in this: that the Court over their objections and exceptions forced and ordered these defendants and heirs at law to offer and submit their evidence at the conclusion of what evidence the Pendleton Banking Company, Administrator of the estate of Anna E. Johnson, deceased, offered in support of its petition for instructions when the Court should have ordered the other parties designated as heirs at law, Charles H. Johnson, William Bousman, Raymond Bousman, Elva B. Widener and Neva L. Huntzinger, to submit their evidence if they had any in sup-

port of Pendleton Banking Company, administrator of the estate of Anna E. Johnson, deceased, on its petition for instructions, so and by reason of this error of law these heirs and defendants were harmed and justice was not done between the parties."

It is well settled that the order in which testimony is introduced in the trial of a cause is so largely in the discretion of the trial court that objections to the order of introduction of evidence will not constitute reversible error unless such discretion is clearly and manifestly abused. *Heilman* v. *Shanklin* (1878), 60 Ind. 424, 450, 451; *Harbison* v. *Boyd* (1911), 177 Ind. 267, 277, 96 N. E. 587; *Miller* v. *Coulter* (1901), 156 Ind. 290, 295, 59 N. E. 853; *Miller* v. *Dill* (1898), 149 Ind. 326, 335, 49 N. E. 272. In the instant case the cause was being tried to the court without a jury and for this reason alone the above rule was especially applicable. It is apparent from the record that the case was tried below on the theory that appellants had the burden of proof upon the issue of the ownership of said funds. It affirmatively appears from the record that the trial court required her to offer her evidence in support of her claim to said funds and then after the other heirs at law had presented their evidence to dispute such claim of ownership, said appellant Anna V. Bulen was permitted to offer additional evidence in rebuttal in support of her claim to said funds. Upon the facts disclosed by the record we cannot say that the trial court abused its discretion in designating the order in which the evidence should be introduced.

In specifications 25 and 26 of the motion for a new trial appellants assign as error the overruling of the motion for a finding in their favor and against the

administrator of the estate of Anna E. Johnson, deceased, which motion was filed at the conclusion of the evidence introduced by the Pendleton Banking Company, as administrator, in support of its petition and renewed by appellants at the conclusion of all the evidence.

As hereinafter set forth, there was ample evidence to justify the court in overruling and denying each of said motions.

By specifications 1, 2, 3, 4, 5, 6, and 27, respectively, of their motion for a new trial appellants assign as error that the decision of the court is not sustained by sufficient evidence and is contrary to law in that the finding of the court and the special findings of facts are not sustained by sufficient evidence and are contrary to law. Under these specifications of the motion for a new trial we are required to examine the evidence and determine—first, whether or not the special finding of facts contains a fact which is essential to the decision of the court which is not supported by any evidence and which cannot be supplied by any reasonable inference drawn from the evidence; secondly, whether or not the undisputed evidence establishes a controlling fact within the issues which is not found but which, if found, would necessitate different conclusions of law and a different judgment based thereon. *Central Pharmacal Co.* v. *Salb* (1939), 106 Ind. App. 495, 500, 501, 13 N. E. 2d 875.

We have carefully read the evidence contained in the record and, considering the evidence most favorable to the appellees, we find ample evidence sufficient to establish the following facts:

That the decedent, Anna E. Johnson, died intestate on February 11, 1945, leaving surviving as her heirs at law her husband, Charles H. Johnson, whom she had

married in 1936, and six children by a former marriage, to-wit: Neva L. Huntzinger, William Bousman, Raymond Bousman, Elva B. Widener, all appellees herein, and Gillette Bousman and Anna V. Bulen, appellants herein. Anna E. Johnson and her husband, Charles H. Johnson, resided at 841 Broadway, Anderson, Indiana, in property owned by said Anna E. Johnson. In addition to said real estate said Anna E. Johnson owned a life estate in an 80-acre farm and a 2-acre tract in fee simple in Stoney Creek Township, Madison County, Indiana.

For several years prior to said decedent's death, she carried a checking account at the Pendleton Banking Company in Pendleton, Madison County, Indiana. On or about August 20, 1941, Anna E. Johnson went to said bank and, after consultation with the vice president of said bank, had the account changed from the name of Anna E. Johnson to the name of "Anna E. Johnson and/or Anna V. Bulen." At that time there was a balance in the account of $512.26. At the time the account was changed to the joint name, as aforesaid, Anna E. Johnson made the statement that she placed the same in the joint account so that Anna V. Bulen would get the money at her (Mrs. Johnson's) death. Thereafter, from August 20, 1941, until the death of Anna E. Johnson on February 11, 1945, the account was carried in the name of "Anna E. Johnson and/or Anna V. Bulen." At the time of Anna E. Johnson's death there was a balance on deposit in said account, subject to check, in the sum of $2,326.69.

The evidence most favorable to appellees was that during the years, 1942 to and including 1944, the husband, Charles H. Johnson, was employed at the Anderson Stove Company and earned the following wages, to-wit: 1941, $2,800; 1942, $3,800; 1943, $3,731.40; and

approximately the same amount in 1944. That the husband was paid by checks which he cashed, or caused to be cashed, and handed the cash over to his wife, Anna E. Johnson, to keep. That she kept such cash in a separate pocketbook and this money was used to pay household living expenses. Any cash left after the payment of expenses was deposited along with other funds in the joint account. Many of the bank statements which were returned to Anna E. Johnson during her lifetime were multilated by Mrs. Johnson by blotting out or cutting off the name of Anna V. Bulen. This was done to prevent her husband, Charles H. Johnson, from learning that Anna V. Bulen's name was on the account. His wife had told him that the account was in their joint names and he never learned the difference until after Mrs. Johnson's death.

The 80-acre farm in which Anna E. Johnson owned a life estate was farmed on a fifty-fifty basis by her son, Gillette Bousman, appellant herein. The income from the farm consisted of the proceeds received from the sale of hogs, grain, livestock, and money from the sale of milk and other dairy products. All of the money received by Anna E. Johnson from the farm and the milk checks, together with any cash left from the husband's wages, after payment of living expenses, was deposited in the checking account in the Pendleton Banking Company in the name of "Anna E. Johnson and/or Anna V. Bulen."

The deposits consisted of cash and checks and were made in person by Anna E. Johnson or by her daughter, Anna V. Bulen, acting as agent for her mother in making such deposits. Anna V. Bulen never at any time deposited any of her own personal funds in said checking account and never at any time exercised or attempted to exercise any control over said checking

account and she never at any time drew or attempted to draw or cash any checks against said account for her own personal use or benefit. When any checks were drawn against said account, they were written by Anna E. Johnson and the proceeds used to pay her obligations and those of her husband, Charles H. Johnson. The bank passbook for said checking account was retained in the exclusive possession of Anna E. Johnson until shortly before her death. She was removed from her home on a Tuesday afternoon at about 6:30 and taken to a nursing home for treatment, where she died the following Sunday. Before leaving her home she obtained cash from her husband's wages in the sum of over $300 and gave it to her daughter, Anna V. Bulen, for the express purpose and with directions for paying certain bills and expenses and she also handed to her daughter, Anna V. Bulen, at said time the bank passbook to keep. Mrs. Johnson never at any time prior to her death authorized or instructed Anna V. Bulen to draw any checks against the checking account. For the years, 1941 to 1944, Anna E. Johnson and her husband, Charles H. Johnson, filed joint income tax returns for their federal income taxes.

The foregoing facts, together with all reasonable inferences to be drawn therefrom, are sufficient to sustain the special findings of facts. In our examination of the record we have failed to find any undisputed evidence which leads inescapably to the establishment of an ultimate fact not found by the court, but which, if found, would necessitate a different conclusion of law from those rendered by the court. In this connection it must be remembered that the trial court as the trier of the facts was the exclusive judge of the weight of the evidence, the credibility of the witnesses, the exclusive judge of what facts had been

proven, the inferences to be drawn from the proven facts, and that this court upon appeal cannot substitute its judgment as to what facts were established by the evidence for that of the trial court. Any fact in issue which was not found by the trial court in its special findings of facts must be considered as not having been proved. *Home Equipment Co.* v. *Gorham* (1941), 218 Ind. 454, 459, 33 N. E. 2d 99; *Deming Hotel Co.* v. *Sisson* (1940), 216 Ind. 587, 593, 24 N. E. 2d 912.

The remaining question for our consideration is: Did the court err in its conclusions of law rendered upon the special findings of facts?

By the exception to the conclusions of law, the appellants admit for the purpose of testing the correctness of such conclusions of law that the facts as found by the court have been found correctly. *Central Pharmacal Co.* v. *Salb, supra.*

It is appellants' contention that the balance in the checking account at the death of Anna E. Johnson in the sum of $2,326.69 was the absolute property of the appellant Anna V. Bulen, as the result of a gift from her mother, Anna E. Johnson, either through (1) a gift *inter vivos*, or (2) a gift *causa mortis*.

A gift *inter vivos* of personal property or a chose in action is a voluntary act of transferring the right to and the possession of such chattel or chose in action whereby one person renounces and another acquires the immediate right and title thereto. An agreement, intention, or promise to make a gift effective in the future is void as being without consideration. To make a valid gift *inter vivos* there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing and a change of title must be irrevocable. Words

alone, unaccompanied by the delivery of immediate possession, are not sufficient to constitute a gift *inter vivos,* except where the gift is already in the possession of the donee. The transfer must be so complete that, if the donor again attempts to assume control of the property, without the consent of the donee, he becomes liable as a trespasser. *Reasner, Admr.* v. *Bohne* (1921), 76 Ind. App. 114, 118, 119, 129 N. E. 490; *Michael* v. *Holland* (1942), 111 Ind. App. 34, 39, 40, 40 N. E. 2d 362.

It is clearly apparent that the facts as found specially by the court wholly fail to establish all of the elements necessary to constitute a valid gift *inter vivos* under the above rules.

In order to constitute a gift *causa mortis,* there are three essential things that must be established by the evidence: 1. The gift of personal property, or chose in action, belonging to the donor must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady. 2. The donor must die without recovery. 3. The possession of the thing given must have been actually or constructively delivered to the donee, with the intention that the title vest conditionally upon the death of the donor. A mere unexecuted purpose, however clearly or forcibly expressed, so long as it rests merely in intention, is not effectual. *Devol* v. *Dye* (1889), 123 Ind. 321, 324, 24 N. E. 246.

Gifts *causa mortis* are not especially favored in law because of the opportunity they afford for the perpetration of frauds. Yet, when the facts essential to consummate any such gift are clearly and satisfactorily shown, they are upheld and they are not contrary to public policy.

We have no statutory law in Indiana defining or regulating gifts *causa mortis,* but the statutes of descent, where one dies intestate, govern and control the transmission of all property rights; and where a person desires that, after his death, his property go to others than those who would receive it under the laws of descent, he must accomplish his purpose by compliance with the statutory laws regulating the execution of wills. *Hinton, Admr.* v. *Bryant* (1934), 99 Ind. App. 38, 46, 190 N. E. 554.

It is the general rule that the delivery of a passbook for a general deposit of a checking account in a commercial bank is not a sufficient delivery to sustain a gift *causa mortis* since the depositor does not thereby lose control over the deposit. 38 C. J. S. § 101, p. 914.

In the recent case of *Ogle* v. *Barker* (1946), 224 Ind. 489, 68 N. E. 2d 550, the Supreme Court of Indiana held that the mere fact that the money is deposited in a checking account in the bank in the joint names of the depositor and another is not sufficient to show intent to make an executed gift to another.

In our examination of the record, we find some testimony given by appellant, Anna V. Bulen, tending to establish a gift *causa mortis* as above defined; however, in view of the fact that the trier of the facts had the right in considering her testimony to take into consideration her personal interest and all of the other evidence, circumstances, and surroundings shown by the evidence in determining her credibility as a witness and the weight to be given her testimony, even to the extent of disregarding her testimony, if considered unreasonable or inconsistent with the other facts and circumstances shown by the evidence, we are unable to say that the decision of the

trial court is not correct. *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116, 119; *McKee* v. *Mutual Life Ins., etc., Co.* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Wm. P. Jungclaus Co.* v. *Ratti* (1918), 67 Ind. App. 84, 118 N. E. 966.

Finding no reversible error in the record, the judgment of the trial court is hereby affirmed.

NOTE.—Reported in 78 N. E. 2d 449.